GODDARD, Respondent, vs. CHICAGO, BURLINGTON & QUINCY
RAILWAY COMPANY, Appellant.

*April 28—May 24, 1910.*

*Railroads: Bridges: Obstruction of waters: Negligent construction:
Guarding against floods: Injury to property: Instructions to
jury.*

1. In an action for injury to hay by flood waters alleged to have
   been obstructed and set back by reason of the negligent con-
   struction and maintenance of a railway bridge across a river
   and adjacent bottom lands, the evidence is *held* to support a
   verdict in favor of the plaintiff.
2. In such case the jury were properly instructed, in effect, that
   in building bridges of this kind the surrounding conditions and
   the liability of the adjacent property to injury must be consid-
   ered, and that defendant was bound to know and to take into
   consideration those things which were apparent and to exercise
   ordinary care in adjusting the construction of its bridge to the
   situation.
3. A railway company in constructing a bridge should anticipate
   and provide against floods and freshets which, from having
   been known to occur at longer or shorter intervals, may rea-
   sonably be expected to occur again, but need not make pro-
   vision against unusual or extraordinary floods such as could
   not be foreseen by men of ordinary experience and prudence.

APPEAL from a judgment of the circuit court for La
Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

For the appellant the cause was submitted on the brief of
*Woodward & Lees.*

For the respondent there was a brief by *Morris & Hart-
well* and *Winter & Esch,* and oral argument by *Frank
Winter.*

TIMLIN, J.   The plaintiff sought to recover damages done
to a quantity of hay in his barns and also for growing grass
destroyed by a flood in the La Crosse river bottom lands on
July 21, 1907.   He contended that the flood waters were

obstructed, dammed up, and set back upon his hay and grass by reason of the negligent construction and maintenance of a railroad bridge across this river and bottom land by the defendant. The jury by special verdict found that the rainfall which caused the flood was one that ought reasonably to have been anticipated, and that the bridge was not of sufficient capacity to allow the passage of the waters of the flood and of the driftwood and other material brought down thereby; that such want of capacity was the proximate cause of plaintiff's injury, while the amount of his damages was $750. For this sum and costs the plaintiff had judgment.

The defendant, appealing to this court, contends that the flood was extraordinary and unusual, and that there is no sufficient evidence to show that plaintiff's damages were caused by the negligent construction or maintenance of the bridge in question, and that the court erred in its instructions to the jury. We are furnished by the appellant with no map or chart, and for this reason find it difficult to get relative boundaries, courses, or directions with accuracy. Such map and survey are almost indispensable when the appellant claims, as it does here, that by mathematical calculation and proper interpretation of the testimony it appears affirmatively that the plaintiff's damages were not caused by the inadequacy of the bridge in question.

We gather from the oral evidence that the La Crosse river, with the adjacent wide bottom lands, extends from Medary southwest about four miles to its junction with the Mississippi river. This extension is crossed by several bridges between Medary and the Mississippi, the farthest upstream being that of the Chicago, Milwaukee & St. Paul Railway Company running east and west, having a clear opening for the passage of water of 2,768 square feet; next that of the Chicago & Northwestern Railway Company running east and west and having a clear opening for the passage of water of 3,075 square feet; next a wagon road and bridge, called the

Abattoir Road, running easterly and westerly, having a clear opening for such passage of 2,074 square feet; next the road-bed and bridge of defendant running north and south, the bridge constructed upon piles in bunches or bents with twelve-foot spaces between the bents for the passage of water, and the sum of these clear spaces is equal to 6,565 square feet, of which 3,375 square feet is under that part of the bridge which spans the river. Four other railroad bridges cross the river and adjacent bottom lands between the bridge of defendant and the Mississippi river.

The flood took place on or about July 21, 1907, and was caused by a rainfall on that day of 4.48 inches in fourteen and one-half hours at La Crosse and a considerably heavier rainfall at the same time on the upper waters and tributaries of the La Crosse river. Haying was at this time in progress on plaintiff's farm, which is in the bottom lands mentioned and part of which is upstream from defendant's railroad bridge. Plaintiff had nine barns in which his hay was stored, eight of them above this bridge in question. The damages claimed to growing grass practically dropped out of the case before verdict, and it is apparent that the verdict of the jury is based upon the damage done to hay in some of these barns by the flood. Between the defendant's bridge and the Abattoir Road bridge the river banks are higher than the bottom lands lying further from the river, and the surface of the water in the river at ordinary stage is higher than the bottom lands which lie at some distance from the river banks. This, as is well known, is not an unusual condition in deltas and flat alluvial valleys.

We are unable to ascertain with accuracy how far it was from the northwest boundary line of the flood to that point in the defendant's bridge where the bridge spans the river channel. From a point called Grand Crossing south on defendant's line of railroad the track appears to rest on piling for more than 3,000 feet in length, and at 3,000 feet from that

crossing is the railroad bridge in question, 748 feet long, starting from the northerly river bank and crossing the river channel with seven bents of piles in the river and extending south over the south bank and over the adjacent bottoms about 650 feet. This bridge is six or seven feet above the ordinary surface of the water where it crosses the river, and also from three to seven feet over the bottom lands where it crosses the bottoms. Were this and the relative area of openings in the several bridges for the discharge of water all that appeared, it might be difficult to support the verdict. But there was evidence that lumber, planks, hay, brush, and trees were carried down by the flood and lodged against the piling of this bridge. The openings under the upper bridges were large enough to permit this *débris* to pass through. There was also evidence that the piling under defendant's bridge and roadway had been repaired some four years previously, and that in doing so the old piles were not extracted, but were cut off at the ordinary water level, leaving the stumps. There was also evidence of the extent to which the water was dammed up by this condition, and several witnesses testified from observation at the time, and from flood marks observed immediately after the subsidence of the flood, that the water was two feet higher on the east or upstream side of defendant's bridge and track than on the west or downstream side. The figures of levels and measurements furnished by the defendant are not sufficiently explicit to demonstrate that this testimony is impossible. Many necessary data are omitted. A mere smattering of hydraulics is sufficient to inform one that comparative measurements of the openings for the escape of water under the several bridges could not alone determine the question whether defendant's bridge dammed back the water. This relative area of openings is only one of many factors to be considered. Obstructions in the channel or near the channel at or near defendant's bridge, the extent to which the flow of water was obstructed by *débris* of the flood, the depth and direction of the

current, the sinuosities of the channel, the reservoirs formed by expansions of the flood above stream and between the bridges, the angle at which the current approached the congested bents, all affect this condition. It would be presumptuous in us, on the meager data we have before us, to decide that the court below and the jury had no evidence upon which they could find for the plaintiff. *Spelman v. Portage,* 41 Wis. 144.

The instruction criticised related to the second question of the special verdict, which inquired whether the bridges of the defendant were of sufficient capacity to allow the passage of the flood waters with driftwood and other materials, etc. The court instructed the jury that the defendant was bound to know and take into consideration in the erection of its bridges the area of the La Crosse river valley, the bluffy nature of its sides rendering it subject to a rapid rise of the water, and the fact that at times it carried large quantities of brush and *débris* and sometimes stumps and trees, and the amount of rainfall in the past, the occurrence of high water in the past, the location of plaintiff's barns, their liability to be injured, and each and every fact within its knowledge affecting the height of the water and its liability to do damage. In criticising this charge we must keep in mind that the right of the defendant to construct and maintain the bridge in question is not denied. The inquiry is whether it exercised that right carefully, or whether by lack of ordinary care it so exercised that right as to injure others. *Schmeckpepper v. C. & N. W. R. Co.* 116 Wis. 592, 93 N. W. 533. The instruction in this respect amounts to informing the jury that in building bridges of this kind the surrounding conditions and liability of the adjacent property to injury must be considered, and that the defendant is bound to know and take into consideration those things which are apparent and exercise ordinary care in adjusting its construction to the situation.

We see nothing improper in this instruction so construed.

We do not think that ordinary readers or hearers would understand this language to mean more than this, although a separation of parts and literal reading of such separated parts might give it a more extended meaning. If a bridge built on piles twelve feet apart would be to one of ordinary care and prudence apparently insufficient to allow the passage of floods and the escape of brush, driftwood, and *debris* carried by the flood, and injury to others was likely to result from such lack of escape, then ordinary care would require some other form of bridge construction or some other means of preventing the injury. This does not mean that the defendant must ascertain the exact area of the La Crosse river valley, but it must notice these things in plain sight, and that floods do occur, and that floods carry *debris,* and the usual high water in the past, and the liability to injury of adjacent property, all of which is ordinarily and usually taken into consideration in the construction of a bridge.

Instead of submitting to the jury directly the question whether the flood of July 21, 1907, was an unusual or extraordinary flood, the court submitted: "Was the storm of July 21, 1907, and the flood resulting therefrom in the La Crosse river, such as should reasonably have been anticipated to occur?" But in connection with this question the court explained to the jury that they were to consider whether the flood was an unusual or extraordinary flood, explained the terms "unusual" or "extraordinary," instructed that the railroad company constructing an embankment or bridge is not required to make provisions against such unusual or extraordinary floods as cannot be foreseen by men of ordinary experience and ordinary prudence in the locality where such flood occurs, but that the defendant ought reasonably to have anticipated all floods and freshets which occur annually or at longer intervals, and which, from having been known to occur at longer or shorter intervals, may be reasonably expected to occur again. As explained by this instruction the ques-

tion seems reasonably clear, and we find evidence in the record upon which the jury might well have found that, notwithstanding the excessive rainfall in the upper valley of the La Crosse river, the flood on July 21, 1907, was not unprecedented, but that higher floods occurred in 1876, 1884, and 1900.

*By the Court.*—Judgment affirmed.